————o————

No. 4014.

(Court of Appeal, Parish of Orleans.)

THOMAS J. COCKE vs. JOHN R. FELL.

Issues of fact only are involved herein.

Appeal from Civil District Court, Division "C."

Chas. Rosen, for Plaintiff and Appellee.

W. S. Parkerson, for Defendant and Appellant.

ESTOPINAL, J. Plaintiff who was formerly agent of defendant, who is General Manager in this City of the Penn Mutual Life Insurance Company, sues the defendant to recover the sum of two hundred and sixty-two dollars and sixty-nine cents ($262.69), which he claims is due him as his 55 per cent interest in a premium of four hundred and seventy-seven dollars and sixty-three cents ($477.63), on a life insurance policy written by him.

In his petition plaintiff avers that during the month of March, 1901, he procured from one Eli Laville, an application for insurance in the Penn Mutual Insurance Company, in the amount of seven thousand, five hundred dollars ($7,500.00), which application was accepted and the policy issued by said company; that Laville executed two promissory notes, made payable to himself and by him endorsed in blank, to cover the premium

496

of four hundred and seventy-seven dollars and sixty-three cents ($477.63), and made payable in sixty and one hundred and twenty days after date.

Plaintiff further avers that shortly before the first of the Laville notes mentioned above became due, he left the employ of defendant's company, and that without cause or reason the defendant returned to Laville his said two notes and cancelled the policy.

Plaintiff avers that under contract with plaintiff, the right to sue on notes given in payment was reserved to plaintiff, and that upon learning that defendant contemplated returning the Laville notes and cancelling the policy, he had written defendant to permit him to sue on said notes. Defendant sets up the special defense that he was justified in returning to Laville the two notes executed by the latter and cancelling policy of insurance issued to him for the reason that "when said notes matured, and demand was made on the said Laville, the said Laville refused to pay the same, and claimed that the said notes had ben obtained from him by fraud and deceit; and he and his wife executed an affidavit substantially to this effect: that one T. J. Cocke, acting for the Penn Mutual Life Insurance Company submitted to them the following proposition substantially:

"That in consideration of the surrender to the Penn Mutual Life Insurance Company, of Policy No. 65,861 in said Company, on the life of Eli Laville for seven thousand, five hundred dollars ($7,500.00), upon which policy eleven premiums of one hundred and forty-one dollars ($141.00), each had been paid, the said company would issue to said Laville, their policy No. 181557 for seventeen thousand, five hundred dollars ($17,500.00) ordinary life, on the life of said Laville; that policy No. 65,681, so surrendered, with its cash value, would be full and ample for the new policy, and the only premium to be paid by Laville on said new policy No. 181557 would be a continuation of the annual premium paid on policy No. 65,861 of one hundred and forty-one dollars ($141.00) ; that no other amount would be required, and no cash payment would be called for."

497

That in consumation of Cocke's proposition, which was accepted by the said Laville, the former required of the latter a note of four hundred and ninety-seven dollars and thirty-five cents ($497.35), and that it was agreed that said note would be fully satisfied by the surrender of policy No. 65,861, and that said surrender of said policy would cancel and satisfy all obligations of said Laville to the Penn Mutual Life Insurance Company, excepting the payment of the annual premium of one hundred and forty-one dollars ($141.00), required by policy No. 65,861.

Defendant avers that being satisfied of the truth of the said statements made by Laville, returned to him his said notes, cancelled the policy No. 181557, and *returned* to said Laville policy No. 65,861.

Another averment of defendant's is that "he was induced to believe the statements made by Laville and his wife, from the fact, that on April 2nd, 1901, the said T. J. Cocke, had obtained a policy under similar circumstances, in the same company, for $20,000.00 on the life of one Horace P. Burgere, a resident of the Parish of St. John the Baptist; and had induced him to sign two notes, each for the sum of three hundred and three dollars and thirty-five cents ($303.35), and that said insurance was cancelled by the company at the request of said Burgere, and that said Cocke subsequently made affidavit that there never was any consideration for said notes or any amount due in any way by said Burgere on said notes to said company, and that said notes became void and of no value from the cancellation of the policy issued to Burgere, as aforesaid."

Defendant also sets up a demand in reconvention. alleging a balance to be due him by plaintiff on the general account between them, to which plaintiff filed a supplemental and amended petition claiming a balance due him on the general account.

It was finally shown on the trial below that the general account had been satisfied, and is therefore no longer at issue here. The only issue before us is the commission claimed by plaintiff on the Laville notes. At the outset it may be well to eliminate from defendant's pleadings the averment in reference to the Burgere

transaction by which the defendant hopes to justify his action in returning the Laville notes and cancelling the policy issued said Laville. In the first place the evidence shows a material difference in the conditions and circumstances of the two transactions, but more than this, we think all questions pertaining to the Burgere incident, have, and can have no bearing or influence in determining the issue in the case at bar.

First. Did defendant, by his action in returning the notes executed to cover premium of the policy No. ————, for seventeen thousand, five hundred dollars ($17,500.00), canceling said policy, deprive plaintiff, in violation of a contract reserving to him that right, of suing the maker of the notes, and:

Second. Could plaintiff, under the evidence found in this record, have recovered on the said notes on a suit against Laville?

If both questions are answered in the affirmative, and we do not think from the facts presented that it can be otherwise, then defendant is liable for the loss which he has caused plaintiff to suffer.

The facts are that, during the month of March, 1901, plaintiff, in pusuit of his business of Insurance Solicitor for the Penn Mutual Life Insurance Company, called upon Mr. Eli Laville, who is shown to have been a prosperous planter in St. James Parish, and secured from him an application for insurance in the company represented by plaintiff in the sum of seventeen thousand, five hundred dollars ($17,500.00). Laville executed two notes to cover the premium on said policy, each for the sum of two hundred and thirty-eight dollars and eighty cents ($238.80), both of date March 22nd, 1901, and payable two and four months after said date.

Laville at the time of the issuance of the policy of seventeen thousand, five hundred dollars ($17,500.00), then held, and had held for eleven years, a policy in the same company for seven thousand, five hundred dollars ($7,500.00) on which Laville paid in cash one hundred and forty-one dollars ($141.00) on the premium, and using the loan value of said policy, sixty dollars ($60), each year to make up the difference between one

hundred and forty-one dollars ($141.00), and the total of the premium. Plaintiff in his testimony states what reference he did make as to the use which Laville might make of the seven thousand, five hundred dollars ($7,500.00) (old) policy, and he denies that he made fraudulent representations, and this explanation by plaintiff, is, in our opinion, absolutely borne out by a note in the record neither signed nor delivered, which reads:

"Out of the proceeds of loan on my policy No. 65,861, in Penn Mutual Life after date, I promise to pay to the order of John R. Fell four hundred and ninety-seven dollars and thirty-five cents ($497.35) at 620 Canal street, New Orleans, La."

Plaintiff is asked:

Q. What would have been the purpose of this note?

A. To get money from the company to pay the notes on the new policy by loan on the old policy.

It is not denied that the sum of four hundred and ninety-seven dollars and thirty-five cents ($497.35) was the cash loan value of the old policy nor that it was customary for the insured to make such character of loan in order to meet payment of their premium. In this case the note was drawn up contingently.

It is clear that as an inducement to plaintiff to take out the additional insurance of seventeen thousand, five hundred dollars ($17,500) plaintiff pointed out, that if he, (Laville), should be embarrassed financially when the time came for paying the note on the new policy, he could borrow money from the company four hundred and ninety-seven dollars and thirty-five cents ($497.35) on this old policy to pay these. This amount is shown to be the loan value of the old policy.

Laville's testimony to the contrary is not only absolutely improbable, but is distinctly refuted by the record.

In dealing with Laville, plaintiff, who, in the first place is not shown to be a man who would wilfully and deceitfully misrepresent, but whose record as an insurance solicitor, on the contrary, has earned for him a splended reputation, had not to do with an ignorant, unsophistocated client, but with an intelligent man having large planting interests, and who already carried

500

nearly $50,000.00 of life insurance. The business was not new to him.

Laville and his wife in their affidavit, so much relied upon her as a defense to this suit speak of the return to the company of the old policy of $7,500.00, on which was paid a premium of one hundred and forty-one dollars ($141.00) in cash, on condition of the issuance of the new for seventeen thousand, five hundred dollars ($17,500.00), the premium to be the same as that paid on the seven thousand, five hundred dollars ($7,500.00) policy.

Does not a disposition of this kind suggest business suicide on the part of the man making it? But we need not conjecture as to whether or not such a proposition was ever made by plaintiff to Laville, because there is abundant proof in the record to take the whole matter out of the domain of doubt. ,

We find that the new policy ($17,500.00), was taken out in March, and was delivered to Laville, he having given his two aforesaid notes payable in four and six months from their date. We find also that though the statement is made in the pleadings of defendant that the old policy had been turned over to the company on receipt of the new, in compliance with arrangements made with plaintiff by Laville, *yet in truth and in fact* Laville never parted with his old policy, and we are satisfied, never intended to, and that it was never contemplated he should, for at a time not suspicious he wrote plaintiff the following letter:

"Office of Point Clear Plantation,

Iberville Parish,

White Castle, La., April 16th, 1901.
"Mr. T. J. Cocke, S. A.,

New Orleans, La.
Dear sir:

Agreeable to my promise of 12th instant, to give you a letter regarding my life insurance, would say that on July 1st, 1890, I secured from Penn Mutual Life a policy of $7500, with a 30 per cent premium loan, and being so well pleased with the company, and especially this liberal feature of my policy, that

501

when you called on me on March 12th last and offered to increase my insurance to $25,000 on the same plan, I readily gave you my application for $17,500.

This swells my insurance in the Penn to $25,000, and after an experience of over ten years with the Penn Mutual, and their able, courteous and very accommodating General Agent, Mr. John R. Fell, would say that any man who is fortunate to secure from the Penn this most desirable form of life insurance contract is to be congratulated.

Yours very truly,

(Signed)                                     E. LAVILLE."

But counsel treats this letter lightly, and would have the Court do likewise because, forsoothe, it was not written by Laville, who simply signed it, but was written wholly by plaintiff.

Considering that Laville was a man of experience, thrift and intelligence, we cannot see that it matters whether he wrote the letter with his own hand or had it written by another or that it was written by the solicitor himself, plaintiff here. Suffice it to say that he was not illiterate, and it is not contended that he neither read nor understood the latter. Its terms are plain and clear. It is not a catch letter, and a circumstance which invests it with greater weight is that it was given at a time when there was not the slightest pretense or suspicion of impending trouble between any of those parties to the transaction. Laville, the record shows, never surrendered the old policy; gave notes to meet the premium on the new policy; acknowledged by above letter of date April 16th, to Cocke, "this swells my insurance to $25,000," and he was in fact insured for the latter amount and his beneficiary, in the event of his death, would have received that amount from the insurance company.

When does Laville for the first time complain that he was induced by deception, etc., to insure for the additional $17,500? Not until he is called upon to pay the first note. He then, after some correspondence with the defendant, who at first demurred saying to Laville:

"Had you died at any time since the issue of the last policy, or should you die now, the company would pay your widow

$25,000.00. Such being the case it would seem you justly owe the notes for the last premium, and I trust to have your remittance to cover." Finally, however, notwithstanding the protests made to him by the plaintiff, defendant returned to Laville the notes and cancelled the policy of $17,500.00

It was argued by counsel that there was a motive other than that. which should have been dictated and was required by pure business exigencies. As to this we see no necessity of discussion.

In returning the notes and cancelling the policy, defendant violated an important agreement or contract with plaintiff, whereby to the latter was reserved the right to sue on notes representing premium on policies written by him. Plaintiff demanded an opportunity to sue, and this was denied him by defendant.

This, however, is not sufficient for plaintiff to recover against defendant.

Could plaintiff have recovered against Laville on the notes on which he claims his 55 per cent interest.

The view taken by us, which we have already sufficiently discussed, answers that proposition.

It does not appear absolutely that there was any bad faith on the part of anybody concerned, either directly or otherwise, in this controversy, but that there was at least an unfortunate misunderstanding, is very clear. Both the oral and documentary evidence make strongly for plaintiff.

The judgment of the District Court is eminently proper, and it is hereby affirmed.

June 20th, 1906.

Rehearing refused Nov. 5, 1906.